UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation,<br><br>   Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation,<br><br>   Defendant.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation,<br><br>   Third-Party Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California corporation, APPALACHIAN INSURANCE COMPANY, a Rhode Island corporation, and EMPLOYERS SURPLUS LINES INSURANCE COMPANY, a Delaware corporation,<br><br>   Third-Party Defendants. | C08-1037Z<br><br>ORDER |

ORDER - 1

THIS MATTER comes before the Court on Third Party Defendant Fireman's Fund Insurance Company's Motion for Summary Judgment, docket no. 43. Having considered the pleadings and declarations in support of and in opposition to the motion, the Court now enters the following Order.

# I. BACKGROUND

## A. Underlying Liabilities

In May 2007, Weyerhaeuser Company ("Weyerhaeuser") settled three asbestos bodily-injury lawsuits. Kurtz Decl., docket no. 53, Ex. A at 2, Ex. B at 2-3. The three plaintiffs in the asbestos lawsuits alleged bodily injury from asbestos exposure during the following periods of time: Plaintiff 1, from 1957 to 2006; Plaintiff 2, direct exposure from 1967 to 1976, and bystander exposure from 1976 to 2002; and Plaintiff 3, from 1942 to 1989. McDougall Decl., docket no. 45, Ex. A at 4-5; Kurtz Decl., Ex. A at 2, and Ex. B at 2-3.[1] Weyerhaeuser sought reimbursement for those settlements (the "Underlying Liabilities") from several of its liability insurers.

## B. Weyerhaeuser's Complaint Against ISOP

In July 2008, Weyerhaeuser brought the present action against The Insurance Company of the State of Pennsylvania ("ISOP") to enforce an "Umbrella Policy" that allegedly attached above a primary-layer policy issued by Fireman's Fund Insurance Company ("Fireman's Fund"). Compl., docket no. 1, ¶¶ 4.5, 4.6; *see also* First Am. Compl., docket no. 6, ¶¶ 4.5, 4.6. On May 28, 2009, the Court dismissed Weyerhaeuser's claims against ISOP pursuant to a confidential settlement agreement that fully satisfied Weyerhaeuser's reimbursement claims against ISOP. Kurtz Decl. ¶ 1; Stipulation and Order, docket no. 61.

---

[1] The identity of the underlying plaintiffs in the asbestos cases, and the particulars of those settlements, are the subject of confidentiality agreements and shall not be disclosed herein.

ORDER - 2

## C. ISOP's Third-Party Claims for Contribution Against Fireman's Fund and Other Insurance Companies

On August 15, 2008, ISOP brought a third-party complaint against three insurance companies, including Fireman's Fund, alleging claims for contribution. ISOP's Third-Party Compl. for Contribution, docket no. 8, at 14-16.[2]  In its Third-Party Complaint, ISOP alleged that "Fireman's Fund failed to pay its allocable share of settlement amounts and defense costs resulting from the Underlying Liabilities." *Id.* at 15, ¶ 4.1.  Fireman's Fund now moves for summary judgment on ISOP's claim for contribution against Fireman's Fund.

## D. Fireman's Fund's Primary Liability Policies

Fireman's Fund issued primary liability policies to Weyerhaeuser from 1954 to 1978.  Lewis Decl., docket no. 44, ¶ 3.  Although the specific terms vary in each policy year, all policies contain a minimum deductible, per occurrence limits, and aggregate limits for bodily-injury claims arising out of the products hazard. *Id.* ¶ 3; *see*, *e.g.*, *id.* ¶ 6, Ex. B (the "LC1675400 Policy" in effect from Jan. 1, 1968 to Jan. 1, 1978) at 17-19 (outlining conditions of coverage, including limitations on liability and deductibles); *see id.*, Ex. B at 22-23 (defining "bodily injury," "occurrence," and "products hazard").

The LC1675400 Policy imposed the following requirement on the insured (i.e., Weyerhaeuser):

> If the insured carries other insurance with [Fireman's Fund] covering a loss also covered by this policy, (other than a policy described in Condition O) the insured must elect which policy shall apply and [Fireman's Fund] shall be liable under the policy so elected and shall not be liable under any other policy.

*Id.*, Ex. B at 29 (the "Other Insurance" provision).  Materially identical language appears in every other primary policy issued by Fireman's Fund. *Id.* ¶ 6.

---

[2] On June 5, 2009, the Court dismissed ISOP's contribution claim against Third-Party Defendant Appalachian Insurance Company.  Stipulation and Order, docket no. 67.  ISOP's contribution claim against Third-Party Defendant Employers Surplus Lines Insurance Company remains in the case.

ORDER - 3

### E. <u>Weyerhaeuser's Letters to Fireman's Fund</u>

Within a month of being served with the complaints in the three asbestos lawsuits, Weyerhaeuser sent Fireman's Fund two letters, listing eleven policy numbers, including the policy that was in effect in 1975 (i.e., the LC1675400 Policy), and stating: "Per the terms of the above referenced policies, Weyerhaeuser hereby tenders these lawsuits for defense and indemnity. We look forward to your prompt response regarding both defense and an acknowledgment of coverage obligations." Kurtz Decl., Ex. C (letter dated Oct. 24, 2006 concerning Plaintiffs 1 and 3) and Ex. D (letter dated Nov. 17, 2006 concerning Plaintiff 2) (collectively the "2006 Letters").[3] Weyerhaeuser sent Fireman's Fund a letter dated May 4, 2007, attaching a report to update Fireman's Fund about the first asbestos lawsuit and "request[ing] an acknowledgment of the policy obligations of the undersigned." Kurtz Decl., Ex. E (attached report lists multiple policy numbers for Fireman's Fund at Exhibits Page 90). Marsh USA, Inc., Weyerhaeuser's insurance broker, sent "Weyerhaeuser's Asbestos Excess Carriers" a letter dated May 18, 2007, attaching a report to update the carriers about the second asbestos lawsuit and requesting participation in a conference call. *Id.*, Ex. F (attached report lists multiple policy numbers for Fireman's Fund at Exhibits Page 120).

Weyerhaeuser settled the first asbestos lawsuit on May 14, 2007, and the second and third lawsuits on May 30, 2007. Kurtz Decl., Ex. A at 2, Ex. B at 2-3. After settling the asbestos lawsuits, Weyerhaeuser sent Fireman's Fund letters requesting reimbursement for the defense and indemnity costs incurred by Weyerhaeuser in connection with the asbestos lawsuits. Kurtz Decl., Ex. A (letter dated Sept. 28, 2007 concerning Plaintiff 1), Ex. B (letter dated Oct. 30, 2007 concerning Plaintiffs 2 and 3) (collectively the "2007 Letters").[4] In the

---

[3] These letters are attached to cover letters from Marsh USA, Inc., Weyerhaeuser's insurance broker.

[4] The letters attached as Exhibits A and B to the Kurtz Declaration, docket no. 53, are identical to the letters attached as Exhibits C and E to the Lewis Declaration, docket no. 44.

ORDER - 4

September 28, 2007 Letter regarding the first asbestos lawsuit, Weyerhaeuser tendered the claim "to the 1975 policy year of Fireman's Fund policy number LC1675400," and made no mention of any other Fireman's Fund policy. *Id.*, Ex. A at 4. In the October 30, 2007 Letter regarding the second and third asbestos lawsuits, Weyerhaeuser tendered the claim to Fireman's Fund "to the extent that the underlying Fireman's Fund coverage is not exhausted" by the claim regarding the first asbestos lawsuit. *Id.*, Ex. B at 4.

### F. Fireman's Fund's Payments to Weyerhaeuser Under the Fireman's Fund LC1675400 Policy for the 1975 Policy Year

Fireman's Fund reimbursed Weyerhaeuser for a portion of the Underlying Liabilities pursuant to the Fireman's Fund LC1675400 Policy for the 1975 policy year. Lewis Decl. ¶¶ 8, 10, Exs. D and F (Fireman's Fund's checks to Weyerhaeuser). Weyerhaeuser has taken the position that, "In response to Weyerhaeuser's tender of the Underlying Liabilities for reimbursement, Fireman's Fund promptly paid a full per-occurrence limit, plus defense costs," for two of the three cases at issue between Weyerhaeuser and ISOP, and "[t]he aggregate limit of the Fireman's Fund primary policy were fully exhausted by those payments." First. Am. Compl. ¶ 4.6. Fireman's Fund did not pay Weyerhaeuser on the third case because the products-aggregate limit had been exhausted by the first two cases, and, regardless of exhaustion, Weyerhaeuser's deductible was greater than its costs, which were only defense costs. McDoughall Decl., Ex. A at 5.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 256. All "justifiable inferences" are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

### B. Equitable Contribution

Equitable contribution "allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 419 (2008). The duty to defend and the duty to indemnify are distinct: "the duty to defend arises when a complaint contains any allegations that could make an insurer liable to an insured under the policy, while the duty to indemnify arises when an insured is actually liable to a claimant and the claimant's injury is covered by the language of the policy." *Id.* at 421 n.7.

An insurer is excused from its duty to contribute to a settlement where an insured has not tendered a claim to the insurer. *See id.* at 421 ("[A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage.") (citations omitted). Thus, the duties to defend and indemnify "do not become *legal obligations* until a claim for defense or indemnity is tendered." *Id.* at 421 (emphasis in original). A claim for defense is tendered when the insured affirmatively informs the insurer that its participation is desired. *Id.*; *see also Unigard Ins. Co v. Leven*, 97 Wn. App. 417, 426-27 (1999). Under Washington law, the duty to defend is broader than the duty to indemnify and is more easily triggered. *See Mut. of Enumclaw Ins. Co.,* 164 Wn.2d at 421.

The rule that the duties to defend and indemnify do not become legal obligations until a claim for defense or indemnity is tendered "is largely consistent with the 'selective tender' rule." *Id.* The selective tender rule "states that where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to contribute to a settlement of the claim." *Id.* The selective tender rule "has sound underpinnings" because it "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts." *Id.* at 421-22. The Washington Supreme Court elaborated further:

> An insured may choose not to tender a claim to its insurer for a variety of reasons. Like a driver involved in a minor accident, an insured may choose not to tender in order to avoid a premium increase. The insured may also want to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer. Whatever its reasons, an insured has the prerogative not to tender to a particular insurer.

*Id.*

### 1. **Weyerhaeuser's Selective Tender**

The issue before the Court is whether Fireman's Fund satisfied its duty to indemnify Weyerhaeuser for the Underlying Liabilities.[5] ISOP argues that Fireman's Fund has a duty to indemnify Weyerhaeuser under the multiple policies listed in the 2006 Letters, which included the LC1675400 Policy but also included many other policies that have not been exhausted, or, at a minimum, under the LC1675400 Policy for more than just the 1975 policy year.

There are no genuine issues of material fact precluding summary judgment. Rather, the legal significance of the asserted facts is in dispute. In this case, the duty to indemnify

---

[5] Fireman's Fund has satisfied its duty to defend because it reimbursed Weyerhaeuser for nearly all of its defense costs. Because the duty to defend arises when an insured receives notice that its participation is requested in regard to a particular case, the 2006 Letters likely invoked Fireman's Fund's duty to defend. The Court does not need to reach the issue, however, of whether the 2006 Letters or the 2007 Letters constituted tender of Weyerhaeuser's claim for defense costs, because ISOP does not appear to be seeking contribution from Fireman's Fund for any defense costs, even those related to the third asbestos case, which were less than Weyerhaeuser's deductible.

ORDER - 7

regarding the first asbestos case did not *arise* until that case was settled on May 14, 2007, and the duty to indemnify regarding the second and third asbestos cases did not *arise* until they were settled on May 30, 2007. *See Mut. of Enumclaw Ins. Co.*, 164 Wn.2d at 421 n.7 (The duty to indemnify only "arises when an insured is actually liable to a claimant and that claimant's injury is covered by the language of the policy." ). Fireman's Fund's duty to indemnify for the three asbestos cases did not become a legal obligation until Weyerhaeuser tendered a claim for indemnity to Fireman's Fund. *See id.* at 421. The Court finds, as a matter of law, that Weyerhaeuser selectively tendered the claims for indemnity to the Fireman's Fund LC1675400 Policy for the 1975 policy year, when it sent Fireman's Fund the letter dated September 28, 2007 concerning Plaintiff 1, and the letter dated October 30, 2007 concerning Plaintiffs 2 and 3. Kurtz Decl., Exs. A and B. Although Weyerhaeuser's 2006 Letters, see Kurtz Decl. Exs. C and D, stated that "Weyerhaeuser hereby tenders these lawsuits for defense and indemnity," these statements did not create a *legal obligation* for Fireman's Fund to <u>*indemnify*</u> Weyerhaeuser because Weyerhaeuser was not "actually liable" to the asbestos plaintiffs at that time. Similarly, the letters dated May 4, 2007, and May 18, 2007, see Kurtz Decl., Exs. E and F, did not create a legal obligation on the part of Fireman's Fund to indemnify Weyerhaeuser because they were sent before the respective settlements of the first and second asbestos lawsuits. Because of Weyerhaeuser's selective tender to the Fireman's Fund LC1675400 Policy for the 1975 policy year, Fireman's Fund is excused from indemnifying Weyerhaeuser through other policies or policy years under Washington law.[6]

///

///

---

[6] The Court does not base its ruling on the Orders submitted by the parties in *Weyerhaeuser Company v. Fireman's Fund Insurance Company*, Case No. C06-1189-MJP. Nor does the Court base its ruling on the asserted reimbursement agreement between Weyerhaeuser and Fireman's Fund. The Court DENIES ISOP's requests for further discovery pertaining to these matters.

ORDER - 8

## 2. **Potential Coverage Under Multiple Policies**

Under a "triple trigger" theory that applies to injuries arising from asbestos exposure, "[p]olicy coverage is triggered by a claim that a victim was either exposed to asbestos products, suffered exposure in residence, or manifested an asbestos-related disease during the policy period." *Villella v. Pub. Employees Mut. Ins. Co.*, 106 Wn.2d 806, 813 (1986). ISOP argues that this theory applies to the underlying actions,[7] and, accordingly, that multiple policies were triggered and multiple policy limits are available. This argument fails to distinguish between trigger and tender. What coverage might have been triggered is a separate issue from what coverage Weyerhaeuser actually sought through its tender of its claims for indemnity. One insurer (i.e., ISOP) does not have the right to tender a claim to another insurer (i.e., Fireman's Fund). *See Mut. of Enumclaw Ins. Co.*, 164 Wn.2d at 421 ("Equity provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured."). It is not appropriate to apply this theory in this case because Weyerhaeuser selectively tendered the claim to the Fireman's Fund LC1675400 Policy for the 1975 policy year, and Weyerhaeuser was entitled to do so under Washington Law. *See id.* at 421-22.

## III. CONCLUSION

The Court GRANTS Third Party Defendant Fireman's Fund Insurance Company's Motion for Summary Judgment, docket no. 43, and DISMISSES with prejudice ISOP's claim against Fireman's Fund for contribution. The Court DENIES ISOP's requests for further discovery.

///

///

---

[7] ISOP argues that Plaintiff 1's exposure triggered policies issued from 1957 to 1978, Plaintiff 2's exposure triggered policies issued from 1967 to 1978, and Plaintiff 3's exposure triggered policies issued from 1954 to 1978. ISOP's Opp'n, docket no. 51, at 13.

ORDER - 9

IT IS SO ORDERED.

DATED this 10th day of August, 2009.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 10